# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
      **Plaintiff,**

  v.                                             **Case No. 11-CR-96**

**JOHN BRASFIELD**
      **Defendant.**

## SENTENCING MEMORANDUM

Defendant John Brasfield pleaded guilty to an information charging him with distribution of child pornography, contrary to 18 U.S.C. § 2252(a)(2), an offense carrying a statutory penalty range of 5-20 years in prison. I ordered a pre-sentence report ("PSR") and set the case for sentencing.

In imposing sentence, the district court must first calculate the defendant's advisory sentencing guideline range, then determine the ultimate sentence under all of the factors set forth in 18 U.S.C. § 3553(a). See United States v. Panice, 598 F.3d 426, 441 (7th Cir. 2010). This memorandum sets forth the reasons for my determinations.

## I. GUIDELINES

The parties agreed with the PSR's guideline calculations: base offense level 22 under U.S.S.G. § 2G2.2(a)(2);[1] plus 2 levels because the material involved a prepubescent minor or a minor who had not attained the age of 12 years, § 2G2.2(b)(2); plus 2 based on distribution

---

[1] The child pornography guideline provides for a base level of 18 if the defendant was convicted under 18 U.S.C. § 1466A(b), § 2252(a)(4), § 2252A(a)(5), or § 2252A(a)(7), which generally cover possession cases, 22 otherwise. U.S.S.G. § 2G2.2(a).

of the material, § 2G2.2(b)(3)(F); plus 2 for use of a computer, § 2G2.2(b)(6); and plus five based on the number of images involved, for an adjusted level of 33. Based on his guilty plea and acceptance of responsibility, defendant qualified for a 3 level reduction under § 3E1.1, for a final level of 30. Because he had no prior record, defendant fell in criminal history category I, producing a guideline range of 97-121 months.

## II. SECTION 3553(a)

### A. Methodology

Section 3553(a) directs the court to impose a sentence that is sufficient, but not greater than necessary, to satisfy the purposes of sentencing: just punishment, deterrence, protection of the public, and rehabilitation of the defendant. 18 U.S.C. § 3553(a)(2). In making this determination, the court considers the nature and circumstances of the offense, and the history and characteristics of the defendant, § 3553(a)(1); the kinds of sentences available, § 3553(a)(3); the sentencing guidelines and policy statements, § 3553(a)(4) & (5); the avoidance of unwarranted disparity, § 3553(a)(6); and the need to provide restitution to any victims of the offense, § 3553(a)(7).

As the structure of the statute suggests, the sentencing guidelines are but one ingredient in the § 3553(a) analysis, and they carry no more weight than any of the other factors. See United States v. Carter, 530 F.3d 565, 578 (7th Cir. 2008); United States v. Sachsenmaier, 491 F.3d 680, 685 (7th Cir. 2007). District courts are free to vary from the guideline range based on the particular facts of the case, see, e.g., United States v. Wachowiak, 412 F. Supp. 2d 958 (E.D. Wis. 2006), aff'd, 496 F.3d 744 (7th Cir. 2007), or disagreement with the guidelines on policy grounds, so long as they act reasonably, United States v. Pape, 601 F.3d 743, 749 (7th

Cir. 2010).

**B.     Analysis**

    **1.     The Offense**

On October 25, 2010, an FBI agent conducting an on-line investigation signed on to the "Limewire" peer-to-peer filing sharing program.[2] The agent identified another user with a particular IP address, who had image and video files previously identified as child pornography in other investigations. The agent viewed a list of available files from this IP address, which displayed ninety-four files with names suggestive of child pornography. The agent initiated forty-one downloads from the files, which included images of child pornography.

A subpoena issued to the internet service provider revealed that the IP address belonged to defendant. Agents executed a search warrant at defendant's residence, seizing a computer. A subsequent search of the computer revealed over 1300 files containing images of child pornography, including the files the agent previously downloaded. Several of the child-victims depicted were identified, and victim impact statements from them were provided to the court.

    **2.     The Defendant**

Defendant was fifty years old, married for seventeen years, the father of two sons, with no prior record whatsoever. He was by all accounts a good and involved father and had otherwise behaved in a pro-social fashion. He graduated high school, then earned associate's and bachelor's degrees in engineering technology and industrial management. He worked for

---

[2]Limewire is a free-access file-sharing program that allows users to make files available to all other Limewire users by placing them in a shared folder. Any Limewire user may access that folder to download files, but they may not add to another user's shared folder. United States v. Adams, No. 10-2968, 2011 WL 2938269, at *1 n.1 (7th Cir. July 22, 2011).

3

the same company for twenty-four years, eventually becoming the director of IT support.

Defendant's arrest in this matter placed a strain on his marriage, but his wife remained supportive, as did other family members. The court received numerous positive letters from family, friends, co-workers, and clergy.

Defendant had taken steps to deal with the issues that led to this case. After the search, but prior to the charging of the offense, he sought counseling through a psychologist, Dr. Mark Burns. Dr. Burns confirmed weekly sessions, at which they addressed how defendant compartmentalized the part of his life that led to his viewing of child pornography and his ability to keep it hidden. They also worked on issues of empathy and personification of victims. Defendant also commenced counseling with Dr. Michael Kotkin, a specialist in the field of sexual addiction. In his evaluation, Dr. Kotkin confirmed that defendant attended group sessions twice per month, in which he was actively involved. Dr. Kotkin indicated that defendant's attraction to children had been realized only on the fantasy level through use of the internet. Outside of his use of the internet for this purpose, there was no evidence of clear anti-social attitudes or a history of such behavior in other realms. Defendant was making a serious effort towards addressing the problems involved in his activities and those factors that contributed to such activities along the way. Dr. Kotkin concluded:

> I do not believe, at this point, that Mr. Brasfield is any risk for resuming such activities and there is no evidence of any sexually inappropriate talk or actions toward or with any children as well. In so far as dealing with these problems, it is judged that Mr. Brasfield's efforts, both in individual and group counseling, will certainly allow him to begin to address these problems and also to find other ways to deal with some of the aforementioned dysfunctional attractions. A period of community supervision will also help reinforce such efforts.

(R. 9 at 21.) In addition to these counseling efforts, defendant complied with all pre-trial release conditions in this case.

### 3. The Guidelines

The guidelines called for a term of 97-121 months, but that range derived from the application of U.S.S.G. § 2G2.2, a seriously flawed provision worthy of little deference. Courts have explained these flaws in detail, a discussion I need not duplicate. See, e.g., United States v. Henderson, No. 09-50544, 2011 WL 1613411, at *5-7 (9th Cir. Apr. 29, 2011); United States v. Grober, 624 F.3d 592, 603-07 (3d Cir. 2010); United States v. Dorvee, 616 F.3d 174, 184-87 (2d Cir. 2010); United States v. Diaz, 720 F. Supp. 2d 1039, 1041-47 (E.D. Wis. 2010); United States v. Hanson, 561 F. Supp. 2d 1004, 1009-11 (E.D. Wis. 2008); see also United States v. Stone, 575 F.3d 83, 97 (1st Cir. 2009) ("[W]e wish to express our view that the sentencing guidelines at issue are in our judgment harsher than necessary. As described in the body of this opinion, first-offender sentences of this duration are usually reserved for crimes of violence and the like."), cert. denied, 130 S. Ct. 1115 (2010). In sum, § 2G2.2 reflects the Sentencing Commission's attempt to respond to changes instigated by Congress, rather than an exercise of the Commission's proper institutional role of basing sentences on study and expertise. See Kimbrough v. United States, 552 U.S. 85, 109 (2007).

Several of the most glaring flaws were evident in this case. Defendant started with a base offense level of 22, a number the Commission selected in an attempt to keep pace with the increased statutory penalties passed by Congress, rather than study or expertise. See Hanson, 561 F. Supp. 2d at 1010. He then received enhancements for conduct present in virtually all cases: 2 levels for possession of material involving pre-pubescent children, applicable in 94.8% of sentences under § 2G2.2 in fiscal year 2009; 2 levels for use of a computer, applicable 97.2% of the time; and for number of images, applicable 96.6% of the time, with 63.1% of offenders receiving the full 5-level increase this defendant did. See

5

Dorvee, 616 F.3d at 186; United States Sentencing Commission, Use of Guidelines and Specific Offense Characteristics for Fiscal Year 2009 36-37.

Aside from applying in virtually all cases, these enhancements suffer from further logical flaws. As the Sentencing Commission has noted, the use of a computer enhancement fails to distinguish between serious commercial distributors of on-line pornography and more run-of-the-mill users; the enhancement also fails to recognize that on-line pornography may come from the same pool of images found in other formats. See Hanson, 561 F. Supp. 2d at 1009-10. The number of images enhancement is also questionable because, as a result of internet swapping, offenders readily obtain the necessary number of images with minimal effort. In any event, to the extent that the number of images a defendant possesses may serve as a valid proxy for the harm he caused, nearly doubling the sentence, as occurred under the guidelines in this case, overstates that harm.[3] As courts have noted, the worldwide market for child pornography is so vast that the relative impact of several hundred additional images is minuscule, yet results in a significant increase in the guideline range. See United States v. Smith, No. 10-CR-34, 2010 WL 3910321, at *3 (E.D. Wis. Oct. 4, 2010) (citing United States v. Raby, No. 2:05-cr-00003, 2009 WL 5173964, at *7 (S.D. W. Va. Dec. 30, 2009)).

Defendant also received a 2-level enhancement for distribution under § 2G2.2(b)(3)(F), even though this was a distribution case, where the base level was 22 rather than the base level of 18 applied to mere possessors. See U.S.S.G. § 2G2.2(a). While this may not technically be double counting – the Commission appears to have intended this result – it does not make a great deal of sense either. It essentially means that distributors always start at level

---

[3]In this case, the number of images enhancement increased the range from 57-71 to 97-121 months.

6

24 (at least).[4]  See United States v. Frakes, 402 Fed. Appx. 332, 335-36 (10th Cir. 2010). Moreover, the type of file-sharing seen in this case, which resulted in the distribution aspect, is found in many cases as it is a typical method by which such images are obtained.

For all of these reasons, I gave the guidelines little weight in this case.

### 4.    The Purposes of Sentencing

The parties jointly recommended a sentence of 5 years in this case, and on consideration of the statutory purposes of sentencing I found such a term sufficient.

This was a serious crime, one that required the sexual abuse of children as a predicate. To his credit, defendant seemed to understand that. During his allocution, he spoke of his better understanding of the harm caused the victims. Further, the record contained no indication that defendant produced child pornography or profited from sharing files. Under these circumstances, I found the 5-year term required by statute sufficient to provide just punishment.

The minimum term required by statute also sufficed to protect the public and deter. The record contained no indication that defendant had or was inclined to commit a hands-on offense with a child. He participated in therapy with Dr. Kotkin, a specialist in the area, who shared this assessment, and the letter from defendant's pastor indicated that defendant had been involved with youth in the church with no concerns or red flags. He also cooperated fully

---

[4]Section 2G2.2(b)(3) directs the court to apply the greatest of the following: (A) 5 (or more) levels for distribution for pecuniary gain; (B) 5 levels for distribution for "a thing of value"; (C) 5 levels for distribution to a minor; (D) 6 levels for distribution to a minor that was intended to persuade, induce, entice, or coerce the minor to engage in any illegal activity; (E) 7 levels for distribution to a minor that was intended to persuade, induce, entice, coerce, or facilitate the travel of, the minor to engage in prohibited sexual conduct; and (F) 2 levels for distribution other than distribution described in subdivisions (A) through (E).

7

in this case, participating in an interview with agents, and promptly pleaded guilty to an information, further demonstrating both his contrition and his desire to leave this activity behind. Defendant had no prior record that would otherwise give rise to greater concerns about public protection or deterrence, and he had never served time before so this term certainly sufficed to deter him from re-offending. The prospect of a 5-year federal prison sentence also sufficed to deter others from participating in this market. Finally, a lengthy period of supervised release, with continued counseling, would also assist in deterrence and public protection.[5]

### III. CONCLUSION

Therefore, I committed defendant to the custody of the Bureau of Prisons for 60 months. Based on his financial situation and other circumstances, I determined that he lacked the ability to pay a fine and so waived the fine. Upon release, I ordered him to serve a supervised release term of 10 years. The statute required at least 5 years, see 18 U.S.C. § 3583(k), while the guidelines suggested lifetime supervision, see U.S.S.G. § 5D1.2(b). Given defendant's age, the length of the prison term, and the other circumstances of the case, I found a 10-year term sufficient to ensure monitoring and treatment. As conditions, I required defendant to comply with computer restrictions, participate in a program of mental health assessment and treatment, possess no sexually explicit material, register with state and local authorities as required by law, and provide access to all financial information requested by the

---

[5]This sentence varied from the guidelines, but because it was supported by the facts of the case discussed herein, it created no unwarranted disparity. See United States v. McGee, 479 F. Supp. 2d 910, 913 (E.D. Wis. 2007) (stating that disparity between sentences is "unwarranted only if the judge fails to provide sufficient reasons for the difference, grounded in the § 3553(a) factors"). Further, statistics show that judges sentenced within the child pornography guideline in barely 40% of cases in fiscal year 2010. United States Sentencing Commission, 2010 Sourcebook of Federal Sentencing Statistics 78.

supervising probation officer. Other terms and conditions of the sentence appear in the judgment.

      Dated at Milwaukee, Wisconsin, this 27th day of August, 2011.

                                  /s Lynn Adelman
                                  _____
                                  LYNN ADELMAN
                                  District Judge